IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01273-CMA-CBS

ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York corporation,
        Plaintiffs,
v.

ACADIA INSURANCE COMPANY, a New Hampshire corporation,
        Defendant.

---

**ORDER REGARDING DEFENDANT'S MOTION
FOR CHANGE OF VENUE[1]**

---

Magistrate Judge Shaffer

THIS MATTER comes before the court on Defendant Acadia Insurance Company's Motion to

Dismiss (For Change of Venue Transferring Cause to the District of Vermont) (doc. #12) filed on May

29, 2014. Plaintiffs Zurich American Insurance Company ("Zurich") and American Guarantee and

Liability Insurance Company ("American Guarantee") filed their Response in Opposition (doc. #13) on

June 23, 2014, and Acadia filed a Reply in Support of Motion to Dismiss (doc. # 15) on July 10, 2014.

The parties filed a Joint, Stipulated Motion to Refer Motion to Change Venue to the Magistrate Judge

(doc. #21) on July 30, 2014, requesting that the pending motion be referred to this magistrate judge "for

determination pursuant to Rule 72.2, D.C.COLO.LCivR" which provides that a magistrate judge may be

"designated specifically to conduct any or all proceedings in any jury or nonjury civil action" with the

---

[1]Defendant Acadia's motion, as captioned, seeks to "dismiss this action and to order a change of venue transferring this case to the United States District Court for the District of Vermont." More recently, Defendant clarified the scope of its pending motion, stating that it is no longer seeking dismissal of the action and is "limiting the relief requested to a change of venue and a transfer of this case." *See* Joint Stipulated Motion to Refer Motion to Change Venue to the Magistrate Judge and to Amend Motion (doc. #21). I have captioned this Order to reflect the narrower relief now sought by Defendant Acadia.

1

unanimous consent of the parties.[2]  That Joint, Stipulated Motion was granted by Judge Arguello on July

30, 2014.  *See* doc. #22.  This court has reviewed the pending motion, the related briefs, and the

applicable law, and is sufficiently advised in the premises.  For the following reasons, the court hereby

denies Defendant's motion.

## BACKGROUND

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, 28 U.S.C. § 2202,

*et seq.*, and Fed. R. Civ. P. 57, and for other relief.  More specifically, Plaintiffs seek a declaration

determining the obligations of Acadia to Plaintiffs for equitable subrogation and/or equitable contribution

for amounts incurred by Plaintiffs with respect to the defense and indemnification of Intrawest Stratton

Development Corporation ("Intrawest Stratton") and DEW Construction Corporation (DEW) in a lawsuit

brought by the TreeTop at Stratton Condominium Association, Inc. against Intrawest Stratton, DEW and

others in the Superior Court of Windham County, Vermont (the "Underlying Action").  Plaintiffs claim

that to date they have paid $1,342,018.66 to defend DEW and Intrawest Stratton in the Underlying

Action, and $3,000,000.00 to settle all claims against DEW and Intrawest Stratton in the Underlying

Action – amounts that Plaintiffs allege should have been paid by Acadia.

---

[2]By Order of Reference dated May 8, 2014, this magistrate judge was designated to
conduct non-dispositive proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R.
Civ. P. 72(a) and (b).  While it may be irrelevant in light of the parties' consent and the district
court's Order of July 30, 2014, I note that a number of courts have held that motions to transfer
are non-dispositive in nature.  *See, e.g., Franklin U.S. Rising Dividends Fund v. American
International Group, Inc.*, No. 13-5805 (ILL), 2014 WL 3748214, at *2 (D.N.J. July 29, 2014);
*Siegler v. City of Columbus*, No.2:12-CV-00472, 2014 WL 1096159, at *2 (S.D. Ohio Mar. 19,
2014); *Skolnick v. Wainer*, No. CV 2013-4694 (WFK)(MDG), 2013 WL 5329112, at *1 n.1
(E.D.N.Y. Sept. 20, 2013); *United States v. $21,055.00 in United States Currency*, No. 08-1273-
WEB-DWB, 2010 WL 2044674, at n.1 (D. Kan. May 24, 2010).  *But see Milan Express Co., Inc.
V. Applied Underwriters Captive Risk Assurance Company, Inc.*, No. 13-1069, 2014 WL
279698, at *2-3 (W.D. Tenn. Jan. 23, 2014) (noting a lack of consensus among courts, but
concluding that a motion to transfer venue is dispositive because it terminates case activity in
that particular forum).

The following factual allegations are set forth in Plaintiff's Complaint (doc. #1).  On March 17, 2009, the Condominium Owners' Association commenced the Underlying Action, alleging, in part, that Intrawest Stratton and DEW were liable for various construction defects and resulting property damage. The complaint in the Underlying Action further alleged that Intrawest Stratton was liable for damages arising out of and/or caused by defects in certain aspects of the construction and design of the Project that were within the scope of DEW's work, including, without limitation, roads, drainage, waterproofing, retaining walls, driveways, walkways, roofs and boilers.

In the wake of these allegations, Intrawest Stratton and DEW tendered their defense to Zurich and American Guarantee.  Zurich agreed to defend and indemnify both Intrawest Stratton and DEW under a policy providing primary coverage to Intrawest Corporation ("Intrawest") for bodily injury and property damage, with limits of liability of $2 million per occurrence and a $2 million aggregate for the products completed operations hazard.  American Guarantee's policy provides excess coverage to Intrawest for all enrolled projects on a nationwide basis, with limits of $25 million per occurrence with a $25 million products completed operations hazard aggregate.  Plaintiffs' policies provide coverage to the owner, developer, general contractor and subcontractors which were enrolled in the Owner Controlled Insurance program.

DEW Construction also tendered its defense and indemnification to Acadia under general liability policies having a $1 million per occurrence limit and a $2 million products completed operations hazard aggregate limit.  The limits under the Acadia policies apply annually.  Acadia also issued successive commercial umbrella policies to DEW from January 1, 2001 to January 1, 2009.  These umbrella policies have a $5 million per occurrence limit and a products completed operations hazard aggregate limit, which also apply on an annual basis.  On April 13, 2009, Acadia agreed to defend DEW under the foregoing policies.  Despite that agreement, however, Acadia did not participate in or pay any money towards the

defense or indemnification of DEW.

American Guarantee and Intrawest Stratton tendered Intrawest Stratton's defense to Acadia as an additional insured under the Acadia Policies for the Project.  Acadia did not respond to these tenders.  The Zurich policy exhausted in May of 2010 because of payment of other unrelated claims against Intrawest Stratton.  Following exhaustion of the Zurich policy, American Guarantee began defending DEW and Intrawest Stratton pursuant to a reservation of rights.  On May 17, 2012, American Guarantee agreed to pay $3 million to settle all claims by the Condominium Owners' Association against both Intrawest Stratton and DEW in the Underlying Action.  In addition to the $3 million paid by American Guarantee, Zurich and American Guarantee paid a total of $1,073,766.17 in defense fees and costs on behalf of DEW, and a total of $268,252.49 in defense fees and costs on behalf of Intrawest Stratton.

Despite its acknowledged obligation to defend DEW in its April 13, 2009 letter, Acadia has not reimbursed any of DEW's defense and indemnity costs related to the Underlying Action that were paid or reimbursed by Zurich and American Guarantee. Acadia also failed to respond to Zurich's and American Guarantee's tender of defense and indemnity to Acadia regarding Acadia's obligations to Intrawest Stratton.  Acadia generally denies that Plaintiffs are entitled to the equitable relief they seek, and denies liability to the Plaintiffs.

It is undisputed by the parties that Zurich and American Guarantee are New York corporations with principal places of business in Illinois, and Acadia is a New Hampshire corporation with its principal place of business in Maine.  DEW is a Vermont corporation with its principal place of business in Woodstock, Vermont.  The Underlying Action was a lawsuit for construction defects related to a project in Stratton, Vermont.

In moving to transfer this action to the District of Vermont, Defendant argues that the lawsuit Plaintiffs allege

> Acadia should have paid to defend and settle, the underlying project at issue, and the named defendants alleged to be common insureds, are all in Vermont, not in Colorado. . . . Neither Plaintiffs nor Acadia are either domiciled or have their principal place of business in Colorado.  None of the producers that issued the insurance policies at issue in this case are in Colorado.  The relevant witnesses are likely to be overwhelmingly in Vermont or elsewhere on the East Coast, not in Colorado.  Nothing, at least nothing alleged in the Complaint as a relevant fact, occurred in the District of Colorado.

*See* Defendant's Motion to Dismiss, at 5.  Defendant insists that determination of coverage under its policies will require more than "a sterile reading of the policies and applicable contracts," but also will turn on whether claims and defenses against the insured fall under any applicable exclusions.  Those issues will be "inherently fact specific, requiring investigation and discovery of such questions as whose property was allegedly damaged, when did the damage occur, was that damage during 'ongoing' or during 'completed' operations of the insured, was the 'property damage' to the insured's own work or to other property, and/or was any of the insured's work done by subcontractors?"  *See* Defendant's Reply, at 5.

Plaintiffs argue, in opposition, that their insured, Intrawest Corporation, is a Colorado corporation with its principal place of business in Denver, Colorado.  Moreover, Plaintiffs contend that Acadia has not sustained its burden as the moving party, because it "not only fails to list specific witnesses in Vermont or the materiality of their potential testimony," but also because Defendant "fails to consider the substantive nature of this litigation – an insurer vs. insurer contribution and indemnity case."  In that respect, Plaintiffs insists that "the only relevant facts to determine the outcome of this matter have already been developed in the Underlying Action, and the only relevant documents are the [Zurich], [American Guarantee] and Acadia policies, along with the documents already generated in the Underlying Action."  *See* Plaintiffs' Response in Opposition, at 2.

## ANALYSIS

The legal standard that must guide this court's recommendation is not in dispute.  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."[3]  Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), (quoting *Continental Grain Co. v. Barge, F.B.L.-585,* 364 U.S. 19, 26-27 (1960)), *superseded by statute as stated in Ross v. Colorado Outward Bound Sch., Inc.* 822 F.2d 1524 (10th Cir. 1987).  The district court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness.  *Wada v. United States Secret Service*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin and Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

Ultimately, the moving party has the burden of showing that the action could have been brought in the alternative forum, the existing forum is inconvenient, and the interests of justice are better served in the alternate forum.  *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005).  *See also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999); *Chubb v. Union Pacific Railroad Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995).  "[U]nless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co., Inc. v. Traveler's Indemnity Co.*, 467 F.2d 662, 664

---

[3]The parties do not dispute that this action could have been brought originally in the District of Vermont.  *See* 28 U.S.C. § 1391(a) (in an action where subject matter jurisdiction is based upon diversity, a civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to persona jurisdiction at the time the action is commenced).

(10th Cir. 1972)).  *See also Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 , 1168 n.

13 (10th Cir. 2010) ("For more than five decades, we have required the movant to demonstrate that the

balance of factors 'strongly favors' a transfer of venue under § 1404(a).").

In applying § 1404(a), the district court should weigh several factors, including the plaintiff's

choice of forum,

> the accessibility of witnesses and other sources of proof, including the availability of
> compulsory process to insure attendance of witnesses; the cost of making the necessary
> proof; questions as to the enforceability of a judgment if one is obtained; relative
> advantages and obstacles to a fair trial; difficulties that may arise from congested dockets;
> the possibility of the existence of questions arising in the area of conflicts of laws; the
> advantage of having a local court determine questions of local law; and, all other
> considerations of a practical nature that make trial easy, expeditious and economical.

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  *See also Four*

*Corners Nephrology Associates*, *P.C. v. Mercy Medical Center*, 464 F. Supp. 2d 1095, 1098 (D. Colo.

2006) (factors relevant to a transfer under § 1404(a) include the plaintiff's choice of forum, the

convenience of witnesses, the accessibility of witnesses and other sources of proof, the possibility of

obtaining a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious

and economical).

Many of the factors cited in *Chrysler Credit Corp.* have little, if any, significance under the

particular facts of this case.  For example, neither side has raised issues concerning the enforceability of

any judgment that might be entered.  Neither side suggests that the case will turn on the interpretation or

application of law that is either unique or complicated.  Indeed, Acadia concedes that "this Court could

certainly apply Vermont law."  Similarly, the parties have not argued that either the District of Colorado

or the District of Vermont will provide "obstacles to a fair trial."

Plaintiffs' choice of forum should be given weight in deciding a motion to transfer under §

1404(a), particularly where granting the request for transfer would simply shift the inconvenience from

one party to the other. *Cf. Mohr v. Margolis, Ainsworth & Kinlow Consulting,* Inc., 434 F. Supp. 2d 1051, 1064 (D. Kan. 2006) (holding that it is best not to disturb plaintiff's choice of forum if a transfer of venue will only shift the burden on the parties). *See also Wells Fargo Financial Leasing, Inc. v. Orlando Magic*, 431 F. Supp. 2d 955, 966-97 (S.D. Iowa 2006) (noting that '[c]ourts will normally hesitate to disturb a plaintiff's choice [of forum] unless the moving party 'demonstrates that the balance of convenience and justice weighs heavily in favor of transfer'"); *Graff v. Quest Communications Corp.*, 33 F. Supp. 2d 1117, (D. Minn. 1999)( "[S]ection 1404(a) provides for transfer to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.") (emphasis added).

However, the weight accorded Plaintiffs' choice of forum "is only proportionate to the connection between the cause of action alleged and the chosen forum." *Blue Mako, Inc. v. Minidis*, 472 F. Supp.2d 690, 703 (M.D.N.C. 2007). *Cf. Goodman v. Schmalz*, 80 F.R.D. 296, 302 (E.D.N.Y. 1978) ("[w]here the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight"). Here, the factual connections to Colorado are minimal. *See also AKH Company, Inc. v. Universal Underwriters Insurance Co.*, No. 13-2003-JAR, 2013 WL 2948422, at *2 (D. Kan. June 13, 2013) (courts accord "little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum'"). Although this court will not disregard Plaintiffs' choice of forum, that factor should be accorded only slight deference.

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Bartile Roofs, Inc.*, 618 F.3d at 1169 (quoting *Cook v. Atchison, Topeka & Santa Fe Railway Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality and materiality of the[ir] testimony;' and (4) 'show[

] that any such witnesses were unwilling to come to trial . . . [,] or that the use of compulsory process would be necessary.'" *Bartile Roofs,* 618 F.3d at 1169 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). *See also Amazon.com v. Cendent Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (in considering the convenience factor, the court "should consider not only how many witnesses each side may have but also the relative importance of their testimony").

Although it contends that coverage issues may turn on fact-specific inquiries, Acadia's argument is couched more in generalities than specifics. Counsel for the parties concede that numerous expert reports were prepared and depositions taken in the Underlying Action. It is not clear to this court whether unidentified experts in the Underlying Action would be susceptible to service of process in the District of Vermont or agree to serve in the same capacity in this action. I will presume any expert retained by the parties will be available for trial, regardless of the forum. The court also does not know to what extent, if at all, access to discovery and deposition testimony from the Underlying Action may reduce the need to "inconvenience" the same non-party witnesses in this action. *Cf. Medicap Pharmacies, Inc. v. Faidley*, 416 F. Supp. 2d 678, 687 (S.D. Iowa 2006) (finding that defendants had failed to meet their burden of persuasion on the "convenience to witnesses" factor because "they have not named any actual potential witnesses, nor have they offered any evidence that witnesses would be unable or unwilling to testify [the current forum], or that deposition testimony of such witnesses would be inadequate").

Neither side has identified difficulties that may arise from congested dockets in the District of Colorado or District of Vermont. Federal Court Management Statistics show that for the twelve month period ending March 31, 2014, each active district judge in the District of Vermont had an average of 268 cases, and the average weighted filings per judge in the District of Vermont was 272. In the District of Colorado, there were 472 cases per judge and the average weighted filings was 683. However, during the same twelve month period, the medium time from filing to disposition for civil cases in the District of

Vermont was 9.5 months and 6.2 months for civil cases in the District of Colorado.[4]  *Cf. PLX Technology, Inc. v. Knuettel*, 2012 WL 1813291, at *3 (D. Colo. May 17, 2012) ("When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge and average weighted filings per judge.").

Finally, the court's analysis under § 1404(a) should take into account "considerations of a practical nature that make trial easy, expeditious and economical."  That factor seems particularly significant given the current posture of this case.  As the court noted in *A.C. Nielsen Company v. Hoffman*, 270 F.2d 693, 696 (7th Cir. 1959), "it is unwise for a [judge] to enter an order of transfer in the early stages of a case before it can be determined just what the issues in that case are going to be."

> Section 1404(a) . . . permits the transfer of the cause to another forum if the transfer makes the trial of the case easy, expeditious and inexpensive, that is, more convenient to the parties and witnesses.  Sine these are the factors that must be considered, it would seem proper for the court to rule on the motion to transfer venue only in the event it is decided that a trial is necessary.

*Structural Preservation Systems, LLC v. Andrews*, 931 F. Supp. 2d 667, 676-77 (D. Md. 2013) (quoting *Bohnen v. Baltimore & O.C.T.R. Co.*, 125 F. Supp. 463, 464 (N.D. Ind. 1954)).  The same measured approach seems appropriate in this case.

During a preliminary Fed. R. Civ. P. 16(b) scheduling conference, the parties initially proposed to spend ten months doing discovery and suggested a dispositive motion deadline of May 29, 2015. Counsel conceded that the Underlying Case had involved a number of parties, a large volume of documents,[5]  and

---

[4]I was not able to find statistics showing the District of Vermont's median time from filing to trial.

[5]In this era of electronically stored and transmitted information, the location of relevant documents (however voluminous) may carry significantly less weight in the § 1404(a) analysis. *Cf. Walker v. Jon Renau Collection, Inc.*, 423 F. Supp.2d 115, 118 n. 3 (S.D.N.Y. 2005) ("the location of documents 'is neutral [i]n today's era of photocopying, fax machines and Federal Express'").

multiple designated experts on damages issues.  However, counsel conceded that the threshold issue in this case involved whether or to what extent Acadia had a duty to defend Intrawest Stratton or Dew, and that the discovery required to address that threshold question was quite limited.  The parties also agreed that any ruling on the duty to defend might eliminate the need for or narrow the scope of discovery bearing on the duty to indemnify.

On July 29, 2014, the parties submitted a revised scheduling order that adopted the court's suggested phased approach to the pretrial process.  Phase I addresses Acadia's duty to defend and any defense or matters in mitigation or avoidance relating to the duty to defend, while Phase II would address Acadia's duty to indemnify and any defenses or matters in mitigation or avoidance related to the duty to indemnify.  The revised scheduling order established a Phase I discovery cut-off date of October 15, 2014 and a Phase I dispositive motion deadline of November 15, 2014.  The parties also do not presently anticipate the need for experts in Phase I.  The revised scheduling order acknowledges that the case will move into Phase II only if the district court determines that Acadia had a duty to defend DEW and/or Intrawest Stratton in the Underlying Action.[6]  This approach to case management also accentuates the District of Colorado's faster median time from filing to disposition of civil actions.

Given the parties' thoughtful approach to case management and the very limited discovery necessary to frame the threshold issue of Acadia's duty to defend, it seems premature to address the "convenience of witnesses" factor under § 1404(a).  *Cf. MaGahee v. Trumbull Insurance Co.*, No. 11-cv-03007-WYD-MEH, 2012 WL 1388859, at *3 (D. Colo. Apr. 23, 2012) (in this insurance coverage case,

---

[6]I commend counsel for their willingness to pursue a creative and cost-effective approach to the pretrial process in this case.  The Civil Rules Advisory Committee has proposed an amendment to Fed. R. Civ. P. 1 that acknowledges the court *and the parties* have an obligation to construe, administer and employed the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Counsel, to their credit, have embraced that goal.

the court denied defendant's motion to transfer; "at this stage of the litigation and on the record before me, I cannot speculate on whether Defendant will eventually prevail on its primary defense" of lack of coverage, thus making the fact-intensive issue of causation moot); *Shirely v. First Comp Insurance*, No. 10-cv-0476, 2010 WL 2079752, at *4 (E.D. Pa. 2010) (noting that in deciding a motion to transfer, "the burden is entirely on [defendant]" to show that a transfer is justified; "where [the court] is forced to use conjecture" in its balancing analysis and "even after relying on this conjecture the weight of the factors only slightly point in favor of a transfer of venue, we simply cannot find that Defendants have met their burden on this Motion").

If the district court determines that Acadia had no duty to defend in the Underlying Action, further discovery is unnecessary and there will be no inconvenience to witnesses.  The parties may also find, after weighing the costs of potentially duplicative discovery, that expert reports and depositions in the Underlying Case substantially narrow the discovery actually necessary to litigate the duty to indemnify. *See* Fed. R. Civ. P. 26(b)(2)(A).  These are all decisions for the future[7] and nothing in this Order precludes Acadia from seeking transfer on a more complete record.  Suffice to say, at this time the court finds that Defendant has not sustained its burden of showing that the balance of convenience and justice weighs heavily in favor of transferring this action to the District of Vermont.

---

[7]*But see Kreinberg v. Dow Chemical Co.*, 496 F. Supp. 2d 329, 331 (S.D.N.Y. 2007) (transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are located there"); *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (in *sua sponte* transferring the case to the District of Rhode Island, the court noted that virtually all of the operative events occurred in Rhode Island, all of the named defendants resided and worked in Rhode Island, and other named witnesses have direct connections to the transferee venue); *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp. 2d 392, 395-397 (S.D.N.Y. 2006) (transfer motion granted where numerous party and non-party witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum is where the subject misrepresentations alleged were issued or originated).

13

Accordingly,  Defendant Acadia Insurance Company's Motion to Transfer Venue (doc. #12) is

DENIED as premature.

DATED this 12th day of August, 2014.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge