# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 14-cv-01273-CMA-CBS

ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York corporation,

    Plaintiffs,

v.

ACADIA INSURANCE COMPANY, a New Hampshire corporation,

    Defendant.

---

## ORDER DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE DUTY TO DEFEND

---

This case concerns a dispute among liability insurers. The parties filed cross motions for partial summary judgment on the duty to defend. The Court holds that Defendant Acadia Insurance Company ("Acadia") did not have a duty to defend Intrawest Stratton Development Corporation ("ISDC") as an additional insured. However, genuine issues of material fact preclude the Court from finding that Acadia had a duty to defend DEW Construction Corporation ("DEW") in the State Litigation.

## I.   BACKGROUND

The following facts are undisputed, unless otherwise noted. The Court will elaborate, as needed, in its analysis section.

Zurich American Insurance Company ("Zurich") issued a commercial general liability insurance policy, policy number GLO 3504442-00, to Intrawest Corporation—under which ISDC was a named insured—for the period of April 5, 2001, to April 5, 2005 ("Zurich Policy").  (Doc. # 44 at 3.)  American Guarantee and Liability Insurance Company ("American Guarantee") also issued an insurance policy, policy number AUC 3504443-00, to Intrawest Corporation for the same time period—under which ISDC was a named insured—that provided coverage above the limits of the Zurich Policy, often referred to as excess coverage.  (*Id.*)  Acadia issued successive commercial general liability policies, under policy number CPP 0030879 ("Acadia Primary Policies"), and commercial umbrella policies, under policy number CUA-0030883 ("Acadia Umbrella Policies"), to DEW from January 1, 2001, to January 1, 2009.  (*Id.*)

This case arose out of an underlying construction defect suit ("State Litigation").  (Doc. # 43 at 4.)  In the State Litigation, TreeTop Condominium Association Inc. filed an action on March 17, 2009, against several defendants, including, as relevant in the instant case, ISDC and DEW.  (Doc. # 44 at 4.)  The State Litigation complaint alleged that in or about 2002, ISDC began the development and construction of a condominium complex known as the "TreeTop" project in Stratton, Vermont.  (*Id.* at 2.)  On April 2, 2003, and December 15, 2003, DEW and ISDC entered into agreements relating to the construction of the TreeTop project.  (Docs. ## 44-1 at 1; 44-2 at 1; 54 at 12.)  The State Litigation complaint claimed that the roads, drainage, and boilers were improperly constructed or installed; there were no retaining walls behind the garage units, which resulted in water runoff not properly diverting through the drainage systems;

substandard materials were used on the driveways and walkways; and there were chronic roof leaks in several of the condominium units.  (Doc. # 2-13 at 3–5.)

Both DEW and ISDC tendered the State Litigation to Zurich for coverage; DEW also tendered its defense to Acadia for coverage.  (Doc. # 44 at 4.)  Zurich agreed to defend and indemnify both corporations under the Zurich Policy, pursuant to a reservation of rights and Acadia, through a reservation of rights letter, along with a Nonwaiver Agreement, agreed to provide DEW with a defense under the Acadia Policies.  (*Id.*)  When the Zurich Policy exhausted in May of 2010 because of payment of unrelated claims against Intrawest Corporation, American Guarantee began defending DEW and ISDC pursuant to a reservation of rights.  (*Id.* at 5.)

On May 17, 2012, American Guarantee agreed to pay $3 million to the State Litigation plaintiff to settle all claims against DEW and ISDC.  (*Id.*)  On October 22, 2012, Zurich and American Guarantee demanded full reimbursement for the defense and settlement costs for both DEW and ISDC from Acadia, but Acadia refused to reimburse them.  (Docs. # 43 at 13; 44 at 5.)  Zurich and American Guarantee seek a declaratory judgment that Acadia, pursuant to the Acadia Policies, had the duty to defend and indemnify DEW and ISDC—as an additional insured—in the State Litigation.  (Doc. # 43 at 14.)

The Insuring Agreement in the Acadia Primary Policies state:

> [Acadia] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

3

(Doc. # 2-3 at 10.) In relevant part, the Acadia Primary Policies apply to "property damage" only if: (1) the "property damage" is caused by an "occurrence"; and (2) the "property damage" occurs during the policy period. (*Id.*)

Similarly, the Insuring Agreement of the Acadia Umbrella Policies require Acadia to pay the net loss its insured is obligated to pay due to property damage. Specifically, the relevant portions of the Umbrella Policies state:

> [Acadia] will pay the "ultimate net loss" the "insured" becomes legally obligated to pay as damages because of . . . "property damage" . . . to which this insurance applies. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under the SUPPLEMENTARY PAYMENTS or DEFENSE AND SETTLEMENT sections. This insurance applies to . . . "property damage" . . . which is caused by an "occurrence" during the policy period . . . .

(Doc. # 2-11 at 6.) The relevant portions of the Defense and Settlement provisions in the Umbrella Policies state:

> We have the right and duty to defend any claim or "suit" seeking damages to which this insurance applies, but only with respect to damages:
>
> (a)    Not covered by the "underlying insurance" or by any other valid and collectible insurance to the "insured"; or
>
> (b)    Covered by "underlying insurance" . . . except that such "underlying insurance" does not apply because the applicable limit of insurance has been used up solely by payment of damages because of . . . "property damage" . . . to which this insurance applies caused by an "occurrence" which takes place during the policy period of this policy . . . .

(*Id.* at 7.) "Property damage" is defined as:

> (a)    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 43; Doc. # 2-3 at 50.) An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Docs. ## 2-3 at 49; 2-11 at 42.)

On July 29, 2014, Magistrate Judge Shaffer entered a Scheduling Order bifurcating the instant litigation into two phases: Phase I concerns Acadia's duty to defend and any related defenses; and Phase II concerns Acadia's duty to indemnify and any related defenses. (Doc. # 19.) On January 23, 2015, Plaintiffs and Acadia filed cross-motions for summary judgment regarding the duty to defend. (Docs. ## 43; 44.)

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.  DISCUSSION

Zurich and American Guarantee assert that Acadia had a duty to defend DEW and ISDC—as an additional insured—in the State Litigation pursuant to the Acadia Primary Policies; and, in the event the Acadia Primary Policies are insufficient and/or exhausted, Acadia had a duty to defend them under the Acadia Umbrella Policies.

In determining whether an insurer owes a duty to defend, Vermont courts compare the allegations made against the insured to the terms of the coverage in the

policy.[1] *Coop. Fire Ins. Ass'n of Vermont v. Gray*, 599 A.2d 360, 361 (Vt. 1991). The only way for an insurer to avoid this duty is to demonstrate at the outset that the claims against its insured are entirely excluded from coverage. *Vt. Gas Sys., Inc. v. U.S. Fid. & Guar. Co.*, 805 F. Supp. 227, 231 (D. Vt. 1992). "[A]s long as there exists a possibility that a claim falls within the coverage of an insurance policy, the insurer has a duty to provide a defense for the insured." *Id.* "The duty to defend does not extend, however, to circumstances in which there is, as a matter of law, no duty to indemnify." *Garneau v. Curtis & Bedell, Inc.*, 610 A.2d 132, 134 (Vt. 1992).

Acadia makes numerous arguments, supported by competent evidence in the record, as to why it does not have a duty to defend DEW, including that its coverage is excess to that of Zurich and American Guarantee, it did defend DEW in the State Litigation, and Zurich and American Guarantee voluntarily defended DEW in the State Litigation and, thus, have no right of recovery against Acadia. Acadia does not establish, however, as a matter of **undisputed fact**, that there was **no possible factual or legal basis** on which it might eventually be obligated to indemnify DEW. For example, although Acadia asserts that it retained counsel on DEW's behalf, Zurich and American Guarantee contend that Acadia did not fulfill its contractual and legal obligations to **fully defend** DEW in the State Litigation. Additionally, outstanding issues of material fact remain as to whether DEW was properly enrolled in Zurich's Project

---

[1] "As a federal court sitting in diversity jurisdiction, we apply the law of the state where the claim was brought." *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996). "In Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued." *Id.* (citing *Blue Cross v. Bukulmez*, 736 P.2d 834, 841 (Colo. 1987)). In this case, the parties agree that Vermont law applies. The Acadia Policies were issued to DEW in Vermont. Thus, the Court will apply Vermont law.

Construction Insurance Program.  Thus, the Court is precluded from granting summary judgment with respect to Acadia's duty to defend DEW because there are genuine issues of material fact concerning whether Acadia had a duty to indemnify DEW.  *See Garneau*, 610 A.2d at 134 (citing *Allstate Ins. Co. v. Zuk*, 574 N.E.2d 1035, 1037 (N.Y. 1991) (no duty to defend if there is "no possible factual or legal basis on which it might eventually be obligated to indemnify")).

This leaves the issue as to whether Acadia had a duty to defend ISDC as an additional insured under the Acadia Primary and Umbrella Policies.  The Court must determine whether ISDC is considered to be an additional insured under the Acadia Policies and, if so, whether Acadia was required to provide coverage to ISDC as an additional insured.  The Court finds that, even assuming, *arguendo*, that ISDC was an additional insured under the Acadia Policies, Acadia was not required to defend ISDC for two reasons.  First, ISDC's status as an additional insured ended when DEW's operations for ISDC were completed and, second, property damage that arose from DEW's work after the property had been put to its intended use was excluded from insurance afforded to additional insureds.

Under Vermont law, the interpretation of a contract is a matter of law.  *N. Sec. Ins. Co. v. Doherty*, 987 A.2d 253, 256 (Vt. 2009).  In undertaking the interpretation of a contract, courts "strive to give effect to the intent of the parties as expressed in the plain language of the instrument." *Id.*  Contract provisions must be read together and viewed as an integrated whole.  *Waters v. Concord Grp. Ins. Cos.*, 725 A.2d 923, 926 (Vt. 1999).  Although courts construe ambiguous provisions against the insurer, courts may

8

not rewrite provisions on behalf of the parties.  *Id.* at 926; *State Farm Mut. Auto. Ins. Co. v. Colby*, 82 A.3d 1174, 1178 (Vt. 2013).  Courts must assume that parties included contract provisions for a reason and, thus, courts will not embrace a construction of a contract that would render a provision meaningless.  *In re W.*, 685 A.2d 1099, 1103 (Vt. 1996).

Under the Acadia Primary Policies, an Additional Insured is "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (Doc. # 44-11.)  An additional insured's status is limited, however, to certain instances and a particular timing.  Specifically, the General Liability Expansion Endorsement under the Acadia Policies provides in relevant part that:

> (1) Such person or organization is an additional insured only with respect to liability for your acts or your omissions arising out of your ongoing operations performed for that insured.
>
> (2) A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.
>
> [ . . . ]
>
> (5) With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> [ . . . ]
>
> (b) "Property damage" occurring after:
>
> (i)   All work, including materials, parts, or equipment furnished in connection with such work, on the project (other than service, maintenance, or repairs) to be performed by or on behalf of the additional insured(s) at

           the site of the covered operations has been completed; or

    (ii)    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

(Doc. # 2-4 at 26.)[2]

Thus, assuming, *arguendo*, that ISDC was an additional insured under the Acadia Policies, the General Liability Expansion Endorsement provides that ISDC's status as an additional insured ended when DEW's "operations" for it were completed. Additionally, coverage for ISDC as an additional insured was limited because property damage occurring after DEW's work at the TreeTop site was completed was excluded from the additional insured endorsement. Similarly, coverage for property damage that arose from DEW's work after it had been put to its intended use was excluded. These limitations and exclusions make clear that once DEW's work was complete, ISDC was no longer covered as an additional insured. *See Tri-Star Theme Builders, Inc. v. OneBeacon Ins. Co.*, 426 F. App'x 506, 513 (9th Cir. 2011) (finding that an insurance policy's provision—"A person's or organization's status as an insured . . . ends when your operations for that insured are completed"—would have made clear that once the named insured's work was complete, the additional insured would no longer be covered

---

[2] Zurich and American Guarantee assert that the Acadia Primary Policies for January 1, 2001, to January 1, 2002, and for January 1, 2002, to January 1, 2003, include a different version of the General Liability Expansion Endorsement. However, because the ISDC-DEW agreements were signed in April and December of 2003, the different General Liability Expansion Endorsement language from the 2001 and 2002 Policies is irrelevant.

as an additional insured for damages that occurred after the named insured's operations for the additional insured were finished).

In the instant case, DEW finished its work at the TreeTop project before people began living in the condominiums, the alleged construction defects were discovered, and the State Litigation was filed. Thus, DEW's operations for ISDC were completed, and ISDC's status as an additional insured would have ended when DEW finished its work for ISDC. Additionally, the State Litigation plaintiff sued DEW because of defective construction and resulting damages to roads, drainage, waterproofing, retaining walls, driveways, roofs, and boilers. Because this property had already been put to its intended use, *i.e.*, people were living in the condominiums and driving on the roads, ISDC would not be covered under the Acadia Policies for the resulting damage as an additional insured. Therefore, it is clear that Acadia desired to limit its liability under the Acadia Policies for an additional insured and, pursuant to Vermont law, the Court must give effect to this intent expressed in the plain language of the policies. *See N. Sec. Ins. Co.*, 987 A.2d at 255. Accordingly, the Court finds that Acadia did not have a duty to defend ISDC as an additional insured under the Acadia Polices.

## IV. <u>CONCLUSION</u>

Based on the evidence in record, it is ORDERED that the Motion for Partial Summary Judgment (Doc. # 44) filed by Zurich and American Guarantee is DENIED IN PART and the Motion for Partial Summary Judgment (Doc. # 43) filed by Acadia is GRANTED IN PART. Specifically, Acadia did not have a duty to defend ISDC as an additional insured. However, genuine issues of material fact preclude the Court from

finding, at this stage in the litigation, that Acadia had a duty to defend DEW in the State Litigation.

DATED: September 29, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge