**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-01273-CMA-CBS

ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, and
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York corporation,

 Plaintiffs,

v.

ACADIA INSURANCE COMPANY, a New Hampshire corporation,

 Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

 This matter is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. # 66) and Defendant's Cross-Motion for Summary Judgment (Doc. # 67) regarding Defendant's duty to indemnify Intrawest Stratton Development Corporation ("ISDC") and DEW Construction Company ("DEW") in the State Litigation.  Because the Court concludes that Defendant Acadia Insurance Company ("Acadia") does not have a duty to indemnify ISDC or DEW, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

 Zurich American Insurance Company ("ZAIC") issued a commercial general liability insurance policy, policy number GLO 3504442-00, to Intrawest Corporation—under which ISDC was a named insured—for the period of April 5, 2001, to April 5,

2005 (the "ZAIC Policy"). (Doc. # 93 at 2.) The ZAIC Policy is a Project Construction Insurance Program ("PCIP") that provides coverage for various listed construction and development projects around the country. (Doc # 93 at 2.) American Guarantee and Liability Insurance Company ("AGLIC") also issued an insurance policy, policy number AUC 3504443-00, to Intrawest Corporation for the same time period—under which ISDC was a named insured—that provided coverage above the limits of the ZAIC Policy, often referred to as excess coverage. (Doc. # 93 at 2.) Marsh USA ("Marsh") was the administrator of the Zurich PCIP program, which included the ZAIC and the AGLIC Policies. (Doc # 93 at 3.) As part of the application process to enroll in the PCIP program, all general contractors for Intrawest, including DEW, were required to provide a General Liability Bid Deduction. (Doc. # 93 at 3.) Marsh was not able to produce a Liability Insurance Deduction Worksheet on the prescribed form from DEW. (Doc. # 93 at 3.) It therefore remains unclear whether DEW was properly enrolled in the PCIP. (Doc. # 72 at 7.)

Acadia issued successive commercial general liability policies, under policy number CPP 0030879 ("Acadia Primary Policies"), and commercial umbrella policies, under policy number CUA-0030883 ("Acadia Umbrella Policies"), to DEW from January 1, 2001, to January 1, 2009. (Doc. # 93 at 5.)

This case arose out of an underlying construction defect suit (the "State Litigation"). (Doc. # 57 at 2.) In the State Litigation, TreeTop Condominium Association Inc. filed an action on March 17, 2009, against several defendants, including ISDC and DEW. (Doc. # 57 at 2.) Both DEW and ISDC tendered the State Litigation to ZAIC for

coverage. (Doc. # 93 at 10.) DEW also tendered its defense to Acadia for coverage. (Doc. # 93 at 9–10.) ZAIC agreed to defend and indemnify both corporations under the ZAIC Policy, pursuant to a reservation of rights. (Doc. # 93 at 10.) Similarly, Acadia, through a reservation of rights letter, along with a Nonwaiver Agreement, agreed to defend DEW under the Acadia Policies. (Doc. # 93 at 10.) When the ZAIC Policy exhausted in May of 2010 because of payment of unrelated claims against ISDC, AGLIC began defending DEW and ISDC pursuant to a reservation of rights. (Doc. # 93 at 11.)

On May 17, 2012, AGLIC agreed to pay $3 million to the State Litigation plaintiff to settle all claims against DEW and ISDC. (Doc. # 93 at 11.) On October 22, 2012, ZAIC and AGLIC (collectively "Zurich") demanded full reimbursement for the defense and settlement costs for both DEW and ISDC from Acadia, but Acadia refused to reimburse. (Docs. # 93 at 13.) Zurich now seeks a judgment that Acadia, pursuant to the Acadia Policies, had the duty to indemnify DEW and ISDC. (Doc. # 66.) It also seeks reimbursement and/or contribution of all monies expended in defending DEW, as well as all amounts paid to settle the State Litigation, from Acadia. (Doc. # 66 at 2.)

On July 29, 2014, the Court entered a Scheduling Order separating this litigation into two Phases: Phase I, Acadia's duty to defend, and Phase II, Acadia's duty to indemnify. (Doc. # 19 at 11.) As to Phase I, both parties filed motions for summary judgment in early 2015. (Docs. ## 43–46, 53–56.) On September 29, 2015, this Court issued its Order denying in part Zurich's motion for summary judgment and granting in part Acadia's motion for summary judgment on the duty to defend. (Doc. # 57.) The

Court concluded that Acadia was not required to defend ISDC under the Acadia Primary Policies because ISDC's status as an additional insured under the Acadia Primary Policies ended when DEW's work for ISDC completed and that Acadia had no obligation to defend ISDC after the property was put to its intended use.  (Doc. # 57 at 11.)  The Court made no ruling on the issue of whether Acadia had a duty to indemnify DEW.  (Doc. # 57 at 8.)

Pursuant to this Court's Order, on September 20, 2016, the parties submitted a stipulated statement of facts.  (Doc. # 93.)  The pertinent parts of the insurance language from the statement of facts are incorporated here.  The Zurich Policy includes an "other insurance" clause, which states in part:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a.  Primary Insurance
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
> b.  Excess Insurance
>
> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:
>
> > (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
> > (2) That is Fire insurance for premises rented to you; or
> > (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).  (Doc. # 93 at 4.)

The AGLIC Policy, the excess layer of the PCIP, contains an "other insurance" clause, which states in part:

> … Other Insurance
> If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance. . . . However, this provision will not apply if the other insurance is written to be excess of this policy. (Doc. # 93 at 4.)

The Intrawest Stratton Treetop Overview of Insurance Program states that the PCIP general liability insurance coverage is "primary insurance for both Intrawest and the General Contractor." (Doc. # 93 at 4.)

Similarly, the accompanying Stratton Treetop Insurance Program Manual (Intrawest) states:

> This program is unique in that it provides primary coverage on behalf of Intrawest Corporation, their Subsidiaries and General Contractors for the perils of General Liability, Excess Liability, . . . and Builders' All Risk/Course of Construction Case Insurance. (Doc. # 93 at 4–5.)

The Acadia Primary Policy also contains an "other insurance" provision, which provides in part:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> a.  Primary Insurance
>
> This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
>
> b. Excess Insurance

> This insurance is excess over:
>
> . . . (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
>
> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Doc. # 93 at 6.)

## II.   **STANDARD OF REVIEW**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective beliefs do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of

persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Where, as here, the parties file cross-motions for summary judgment, each motion is considered separately and "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). However, when faced with cross summary judgment motions, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

### III.  DISCUSSION

Both parties acknowledge that genuine issues of material fact exist as to whether DEW was properly enrolled in the PCIP. (Docs. ## 71 at 5, 72 at 9.) When the State

Litigation settled on May 17, 2012, DEW's enrollment in the PCIP was uncertain. (Doc. # 72 at 9.) Regardless of whether DEW was enrolled in the PCIP, however, the ultimate outcome of this case would not change: Assuming that DEW was enrolled in the PCIP, Acadia's coverage would be excess to ZAIC's and Acadia need not indemnify DEW. Section (A) *infra* discusses this issue. On the other hand, assuming that DEW was not enrolled in the PCIP, Zurich is then a "volunteer" with no rights of recovery against Acadia. Section (B) *infra* discusses this issue. Because neither outcome would obligate Acadia to reimburse ZAIC for the expenses it incurred in defending DEW and ISDC, the Court finds that Acadia is entitled to summary judgment.

### A. Assuming DEW was enrolled in the PCIP, Acadia's coverage is excess to AGLIC Policy

Zurich's claims turn on the question of whether Acadia had any duty to indemnify DEW in the underlying settlement. If Acadia can show that policy exclusions apply to exclude indemnity, then Zurich cannot pursue Acadia for the reimbursement of expenses it incurred in indemnifying DEW and ISDC.

Acadia argues that ZAIC's coverage was intended to be primary and therefore Acadia, as an excess insurance provider, need not reimburse ZAIC. (Doc. # 67 at 17.) Zurich however argues the ZAIC and the Acadia Policies have substantively identical "other insurance" clauses that render the excess provisions mutually repugnant and that both insurers must provide coverage on a *pro rata* basis. (Doc. # 69 at 19.) It also claims that Acadia Primary Policies were not "written to be excess" of the AGLIC Policy because the two policies were drafted independently of each other. (Doc. # 69 at 19.)

To resolve these dueling arguments, this Court must now interpret the language of the insurance contracts and apply the legal standards that undergird an insurer's duties to indemnify its insureds.

In Colorado, an insurer's duty to indemnify is distinct from its duty to defend. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n.5 (Colo. 1991). The duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003) (quotation omitted). Because the duty to defend encompasses any potential claims raised by the facts and the duty to indemnify relates to the actual liability imposed, the duty to defend is triggered more easily than is the duty to indemnify, and [w]here there is no duty to defend, it follows that there can be no duty to indemnify[1]. *Constitution Assocs. v. N.H. Ins. Co.,* 930 P.2d 556, 563 (Colo. 1996). However, where there is a duty to defend, there is not necessarily a duty to indemnify. *Id.*

Colorado courts interpret insurance policies de novo, employing the fundamental principles of contract-interpretation. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816, 819 (Colo. 2002). The objective when construing and interpreting insurance policies is to effectuate the parties' intent. *Union Ins. Co. v. Houtz,* 883 P.2d 1057, 1060 (Colo. 1994) (en banc). In general, to determine whether an insurer has a duty to defend the insured, Colorado courts follow the "four corners rule" or "complaint rule," under which

---

[1] In its Phase I summary judgment motion entered on September 29, 2015 (Doc # 57), this Court decided that Acadia did not have a duty to defend ISDC in Treetop. The Court's reasons are fully incorporated herein by reference. Because there cannot be a duty to *indemnify* without a duty to *defend*, it follows that Acadia does not have a duty to *indemnify* ISDC either. *See Constitution*, 930 P.2d at 563.

the courts compare the allegations of the underlying complaint with the applicable policy terms. *DISH Network Corp. v. Arch Specialty Ins. Co.*, 659 F. 3d 1010, 1015 (10th Cir. 2011).

The Colorado Supreme Court has explained that the four corners or complaint rule's purpose is to protect the insured's legitimate expectation of a defense. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 828 (Colo. 2004) (quotations omitted). While the "four corners" or "complaint" rule generally bars the admissibility of evidence extrinsic to the underlying complaint and the relevant insuring agreements in coverage determinations, a "widely recognized exception" to this rule allows a court to consider such evidence where it is unrelated to the merits of the underlying litigation and "plainly take[s] the case outside the policy coverage." *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1147 (10th Cir. 2008). In fact, the Tenth Circuit has determined that, in light of the "authoritative support" for this rule and supporting dicta, the Colorado Supreme Court would likely adopt the exception. *Id.*

An insurer's duty to indemnify arises when "the policy actually covers the harm." *Cyprus*, 74 P.3d at 301. "The determination of whether a duty to indemnify exists requires factual development, as it is largely a question of fact." *EMC Ins. Cos. v. Mid-Continent Cas. Co.*, 884 F. Supp. 2d 1147, 1171-72 (D. Colo. 2012). Extrinsic evidence may therefore assist the trial court in determining whether an existing policy covers actual liability. *Id.* It is appropriate to look at facts and evidence outside the four corners of the complaint to determine an insurer's ultimate objection to indemnify. *See, e.g.*, *Cyprus*, 74 P.3d at 301. In fact, as Zurich itself concedes, "any and all evidence

developed in the [u]nderlying [a]ction may be examined in determining Acadia's indemnity obligations to DEW and ISDC." (Doc. # 66 at 9.)

The ZAIC Policy and the Acadia Policies have substantively identical "other insurance" clauses. Zurich claims these substantively identical "other insurance" clauses render these provisions mutually repugnant and both insurers must provide coverage on a *pro rata* basis. However, this matter is not legally significant because ZAIC Policy exhausted its limits of liability as of May of 2010 in relation to the payment of other unrelated claims against ISDC. (Doc. # 93 at 11.) After that point, AGLIC began defending DEW and ISDC pursuant to a reservation of rights. (Doc. # 93 at 11.) Since the defense or indemnity of DEW did not implicate the ZAIC Primary Policy, the issue that remains is whether Acadia Policies were excess to the AGLIC Policy.

Although the Acadia Policies' "excess" clauses facially conflict with the excess clause in the AGLIC Policy (Doc. # 93 at 4–7), the law permitting the consideration of extrinsic evidence, permits the Court to consider contemporaneous documents in resolving the conflict between the provisions. *See, e.g.*, *EMC,* 884 F. Supp. 2d at 1171; *Cyprus*, 74 P.3d at 301. Both (1) the construction contract that established ISDC's PCIP requirement and (2) the Insurance Overview and Insurance Program Manual governing the PCIP policies (Doc. # 93 at 4–5) confirm that Acadia Policies were intended to be excess over the AGLIC Policy.

The construction contract, which set ISDC's requirement to establish PCIP, states that "PCIP will provide primary insurance coverage for Owner and Contractor and contingent/secondary insurance coverage for Subcontractors." (Doc. # 93 at 8.)

Assuming ISDC was properly enrolled in the PCIP, ISDC would be the owner and DEW a contractor.  The plain language of the construction contract therefore establishes that PCIP was intended to be the primary provider for both ISDC and DEW.

Similarly, the Intrawest Stratton Treetop Overview of Insurance Program Manual that governs the PCIP policies states that the PCIP general liability insurance coverage is "primary insurance for both Intrawest and the General Contractor."  (Doc. # 93 at 4.)  It confirms that the PCIP is primary for contractors at both the primary and excess levels.

Moreover, as Acadia points out, the expressed purpose of OCIP or PCIP-type policies also suggest Acadia Policies to be excess to the PCIP:

> Owner-Controlled Insurance Programs (OCIPs) were developed to make the insurance programs used primarily for construction projects more equitable, uniform and efficient. OCIPs eliminate the costs of overlapping coverage and delays caused by coverage or other disputes between the parties involved in a project and, at the same time, protect all the contracting parties by bringing the risk of loss from the project within the insurance coverage of the OCIP.  (Doc. # 70 at 18.)

John J. Loveless, "Construction Insurance: Do You Only Get What You Pay For?" 78-APR N.Y. St. B.J. 10 (March-April 2006), cited in *Pride v. Liberty Mutual Insurance Co.*, No. 04–C–703, slip op. at 2, 2007 WL 1655111 (E.D. Wis. 2007).

Assuming DEW was properly enrolled in the PCIP, the provisions referenced above support the claim that the PCIP intended to provide primary coverage to both DEW and ISDC.  Because an excess carrier need not indemnify until the primary coverage is exhausted, AGLIC cannot recover indemnity expenses from Acadia.  *See Phoenix Insurance Company v.Cantex, Inc.*, 2015 WL 6859530 *3-4 (D. Colo. 2015);

*Travelers Home and Marine Ins. Co. v. Central Mut. Ins. Co.*, 2014 WL 4947319 *4 (D. Colo. 2014).

### B. Assuming DEW was not enrolled in the PCIP, AGLIC is a "volunteer."

As stated *supra*, it is factually unclear whether DEW was properly enrolled in the PCIP. If we assume that DEW was *not* enrolled in the PCIP, Zurich could not be legally liable to DEW for the claims it settled. Indeed, Zurich would be a "volunteer" in settling for DEW, which precludes its recovery from Acadia. *See Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1485 (10th Cir. 1991) (citing *Reese v. AMF–Whitely,* 420 F. Supp. 985, 989 (D. Neb. 1976) ("subrogation is applied to avoid unjust enrichment when one party, other than a volunteer, has discharged an obligation which should have been satisfied by another")).

Regardless of how the material fact in dispute is resolved, Zurich cannot show facts "admissible in evidence in the event of trial from which a rational trier of fact could find for [Zurich]." *Adler*, 144 F.3d at 671. Assuming that DEW was enrolled in the PCIP, Acadia's Coverage would be excess to AGLIC Policy and Acadia need not indemnify DEW. Conversely, if DEW was not enrolled in the PCIP, then Zurich is a "volunteer" with no rights of recovery. Either resolution does not obligate Acadia to reimburse Zurich.

### IV. CONCLUSION

Based on the evidence in record, it is ORDERED that Zurich's Motion for Summary Judgment (Doc. # 66) is DENIED and Acadia's Motion for Summary Judgment (Doc. # 67) is GRANTED. Specifically, Acadia has no duty to indemnify

ISDC or DEW, and Plaintiff's remaining claims therefore fail as a matter of law.

Accordingly, the suit is DISMISSED WITH PREJUDICE. It is

    FURTHER ORDERED that the pending *Daubert* Motions (Doc. ## 73, 75) are DENIED AS MOOT.

DATED: March 20, 2017

                                BY THE COURT:

                                *Christine M. Arguello*

                                _____
                                CHRISTINE M. ARGUELLO
                                United States District Judge